UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.                                              CRIMINAL NO. 2015-10147-MLW

MEMOGNE LAMOTHE,
             Defendant

# **MEMORANDUM IN SUPPORT OF**

# **MOTION TO RELEASE ON CONDITIONS**

Pursuant to 18 U.S.C. §3142 (c), the defendant, Memogne Lamothe, respectfully moves this Court to issue an Order releasing him on the proposed conditions set forth below.

## **STANDARD**

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." United States v.Salerno, 481 U.S. 739, 747 (1987). Detention shall be ordered only where the Court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §3142(e). The Bail Reform Act sets forth procedures to be used in determining whether there are conditions of release which will reasonably assure the appearance of the person as required and the safety of any person and the community. It provides a list of factors that the officer is to weigh when doing so. Title 18 U.S.C. §3142 (g); creates several" rebuttal presumptions" that the officer is to use when applying the basic standard.

This case concerns one of the "rebuttal presumptions" that the Act creates. It states, subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq).

The Act allows a defendant to present all the special features of his case directly to the Magistrate. The less those features resemble the congressional paradigm, the less weight the Magistrate will likely give to Congress's concern for flight. The individual characteristics of a case and the precise weight to be given the presumption are matters for a Magistrate to take into account within the framework of factors set out in §3142. <u>The Court is not required to impose conditions that guarantee the defendant's appearance or safety of the community but, rather, conditions that reasonably assure those objectives. Tortora, 922 F.2d at 884.</u>

Such a requirement is consistent with "Congress's clear intent that only a limited number of defendants be subject to pretrial detention." Id. Thus, even if the Court finds that the defendant is a flight risk or poses a danger to the community (the first layer of analysis), it must also determine that no conditions or combination of conditions exist to assuage those concerns (the second layer of analysis). The Court, in determining whether the defendant should be released on conditions should look to the factors enumerated in 18 U.S.C. §3142, which include: (1) the nature and circumstances of the offense charged, including whether the offense involves a narcotic; (2) the weight of the

evidence against the defendant; (3) the history and characteristics of the defendant, including past conduct; and (4) the nature and risk of danger to a person or the community posed by the defendant's release. 18 U.S.C. §3142(g).

A finding of probable cause to believe that the defendant violated a provision of the Controlled Substance Act for which the maximum term of imprisonment is 10 years or more triggers a rebuttable presumption that no conditions or combination of conditions exist. 18 U.S.C. §3142(e). Where a rebuttable presumption exists, the defendant bears the burden of producing some evidence to show that the presumption is unwarranted in the circumstances of the case at bar. United States v. Jessup, 757 F.2d 378, 381-82 (1st Cir. 1985). Once the defendant presents some evidence in rebuttal, the presumption becomes but one factor to be weighed alongside the factors enumerated in 18 U.S.C. §3142(g). Id. at 384. *The burden of persuasion always remains with the government to prove by a preponderance of the evidence that no conditions will assure the defendants appearance or by clear and convincing evidence that no conditions will reasonably assure the safety of the community*.  The Magistrate Order also reflects the presumption does not disappear once a defendant introduces some evidence in rebuttal. The standard for review then becomes how closely the defendant's case resembles the congressional paradigm. United States v. Palmer-Contreras, 835 F2d. 15 (1st Cir. 1987). In order to apply this standard accurately, it is necessary to review the Act's Legislative history in order to determine the narrow class of persons Congress envisioned would not be released. Those individuals Congress described as a "reasonably identifiable group of defendants who pose a special risk to the safety of others."

The Bail Reform Act of 1984, which radically altered prior law (The Bail Act of 1966), was largely modeled after a statute enacted in the District of Columbia providing

for pre-trial detention. D.C. Code Title 23 §1321. This statute had been implemented to deal with several problems facing prosecutors in the District of Columbia. By and large, the District was facing a large urban minority community in which drug dependent drug dealers were continuing to commit new offenses while out on bail. The statute permitted pre-trial detention on the assumption that future criminality could be accurately assessed, and the probability a defendant would commit new crimes, while on release, could be related to the nature and seriousness of the offense charged, the existence of prior arrests and convictions, and a history of drug addiction. 1984 U.S.C. & Cong. Report pg.3192. What emerges from an analysis of this legislation is that Congress placed special emphasis on drug related factors and prior criminal history finding it to be "in accordance with empirical research, conducted in the District of Columbia, which indicated a significant correlation between drug use, and both failure to appear and pre-trial re-arrest and between criminal history and pre-trial re-arrest" 1984 U.S. Code & Cong. Report pg.3205. See also testimony of Charles Ruff, U.S. Attorney for the District of Columbia, July 29, 1981, Committee on the Judiciary House of Representatives 97th Congress Vol. No. 94 pgs.58-60. "We make judgments not on classes of defendants, but individualized judgments about whether a particular individual first committed the crime charged and second has a history of criminal conduct which enables us to predict there is a high risk of harm to the community."

  The second major influence on Congress in enacting this legislation was the dramatic rise in drug crimes in the Southern District of Florida. Impetus in the Senate for this legislation came from Senator Lawton Chiles of Florida, the leading sponsor of S.1253, which ultimately became the Bail Reform Act. The late 1970's had seen an

explosion of the cocaine trade and Miami had become the national point of entry for massive amounts of illicit drugs. Citing revenue for traffickers of as much as $500,000.00 monthly, Senator Chiles provided the Senate Subcommittee with multiple instances of drug defendants in the Southern District of Florida, posting substantial cash bails and absconding.

Included with the Senators remarks was a report prepared for Congressman William Hughes by the Administrative Office of the United States Courts, which documented the problems of pre-trial release in narcotics prosecutions in the Southern District of Florida. Distilled to its essential elements, the report detailed 85% of the defendants charged with drug offenses that failed to appear had lived in the district for less than one month. The overall failure to appear rates were much higher than comparable districts. Over half of the persons charged with significant drug crime were non-citizens primarily form Central and South America and Cuba, although the report was unable to precisely determine the citizenship of over 26% of those prosecuted the report concluded most were "illegals" from Central and South America. Senator Chiles Bill, as originally drafted, required the existence of a substantial probability to conclude a person had committed a Federal Drug Offense. Once this factor was established, "the court would look at a series of factors if the Government could establish by clear and convincing evidence the person arrested fell into one of five categories, then the presumption would shift. The person arrested would be held pending trial unless he could present special mitigating factors to justify his release on bail." The Senators original Bill set out 5 factors a judge would consider.

Those factors were:

1. Does the person arrested have a previous narcotics conviction?

2. Is the person on probation or parole for a previous felony narcotics offense?

3. Is the person arrested an illegal alien?

4. Is the person arrested in possession of a false passport?

5. Is the person a fugitive from justice? (See testimony of Senator Lawton Chiles, Senate Subcommittee on the Constitution, October 1981 pgs.56-70).

Those factors outlined above were incorporated, although not word for word, in the Act at Title 18 §3142 (g)(3)(A) and (B). From a review of the entire record of multiple hearings conducted by the House and Senate, it becomes clear the major drug defendant Congress had in mind as risk of flight was a person with limited ties to the community, almost always a legal or illegal alien from Central or South America, capable of earning substantial amounts of cash, with substantial ties and resources, outside the United States, and Foreign contacts to escape prosecution with relative ease. The kind of person Congress envisioned as being a danger to the community appears to be the type of individual the District of Columbia statute was aimed at, the drug addicted recidivist drug dealer whose criminal history and addictive nature made the probability of committing crimes while on release highly likely.

## ARGUMENT

**A.     The Defendant in this matter does not  resemble The Congressional Paradigm.**

The test is not whether the proposed conditions will prevent a defendant from committing a new crime; if such were the case, no one would be released. The test, simply put, is whether the proposed conditions reasonably address the risk associated with the particular individual keeping in mind the Congressional model. In this regard, defendant Memogne Lamothe is  immediately

distinguishable from those individuals Congress had in mind. In his case there is no evidence of drug addiction. His established roots in the community(born and raised in Boston), solid family life(He lives with mother and three siblings in Dorchester), and involvement in a window tinting business put him in stark contrast to those individuals Congress was concerned about.

**B.     The Defendant is not a risk of flight.**

The magistrate should consider the issue of detention "with Congress's general findings in mind." Jessup, 757 F.2d at 385. In creating the presumption, Congress determined that flight among drug traffickers was a significant risk because of: the extremely lucrative nature of drug trafficking, and the fact that drug traffickers often have established substantial ties outside the United States from whence most dangerous drugs are imported into the country, these persons have both the resources and foreign contacts to escape to other countries with relative ease in order to avoid prosecution for offenses punishable by lengthy prison sentences. Id. (citations omitted). Having presented evidence that Memogne Lamothe is not the category of drug traffickers that Congress envisioned, Memogne Lamothe has successfully rebutted the presumption. See also United States v. O'Brien, 895 F.2d 810, 816 (1st Cir. 1990) (finding that although defendant had lived abroad in the past, no evidence that his ties remain close.) In this case there are  there are conditions or a combination of conditions of  release which will reasonably assure the defendant's appearance.  Memogne Lamothe is not a risk of flight and this Court can be assured by a preponderance of the evidence that he  will appear in court.

### C.      Alexander DaSilva Is Not A Danger To the Community.

Although the defendant has a criminal history involving drug convictions and firearm offenses there is no concrete evidence that Memogne Lamothe is a present or future danger to the community.  The government's conclusory assertion in its affidavit that the defendant is a member of a gang lack in specificity for the Magistrate to conclude that if released he would be a danger to the community. If the court  found that this singular allegation were sufficient to find him a danger, it could order as a reasonable condition that the defendant stay away from known gang members and geographical locations.  The Government's reliance on the defendant's criminal record is insufficient to show he is a danger to the community.  Memogne Lamothe  has not been charged with possession of  guns in the instant case. There is no evidence Memogne Lamothe had any connection with guns  in any way alleged to have been recovered in  drug conspiracy.  "Clear and convincing evidence" is evidence that "place[s] in the ultimate fact finder  an abiding  conviction that the truth of [the government's] factual contentions are 'highly probable."**Colorado v. New Mexico,** 467 U.S. 310 (1984 (citing C. McCormick, *Law of Evidence §*320, at 679 (1954)). There is no basis under which the Magistrate could have an "abiding conviction" that Memogne Lamothe is a dangerous person.

### D.       The nature and circumstances of  the offense charged-Indictment.

   1.      The defendant is charged with a violation of 21 U.S.C. §846 (a). The defendant is alleged to have been involve in a conspiracy to possess with intent to distribute over 500 grams of powder cocaine

    2.       No acts of violence in connection with the charged conspiracy by the defendant are alleged by the Government.

    3.       Defendant is not charged with possessing a firearm in connection with the charged conspiracy.

    4.       Defendant was not a leader, supervisor or organizer of any other person in the charged conspiracy.

.

**E.**    **Factors Supporting Release on Conditions.**

"Detention determination must be made individually and, in the final analysis, must be based on the evidence which is before the court regarding the particular defendant." Tortora, 922 F.2d at 888. Defendants should not be "lumped together" with other co-defendants or by alleged memberships in criminal enterprises. United States v. Patriarca, 948 F.2d 789, 794 (1st Cir.1991). *The facts of this case are not of a degree where no condition or combination of conditions will assure the defendants appearance or the community's safety.*

### PROPOSED CONDITIONS

(1)    The defendant shall live only at 144 Seaver Street, Boston, Massachusetts ("the residence") and at no other location.

(2)    The defendant is released into the Third Party Custody of his mother, Eunidi Lamothe.

(3)    The defendant shall be subject to electronic monitoring at the residence and may not leave the residence during the hours of 8:00 P.M. and 7:00 A.M.

(4)   There must be a landline telephone at the residence and all features on the landline telephone which are incompatible with electronic monitoring must be removed **prior** to the defendant's release.

(5)   The defendant acknowledges that a warrant for his arrest has been signed by an authorized judicial officer and is being held in abeyance and, further, that the warrant will be activated without notice to the defendant if he should be found to have violated Condition # 3.

(6)   The defendant surrenders his passport to Pre-Trial Services on the next working day after her release and shall not apply for a passport or any type of travel documents while on release.

(7)   The defendant's travel is restricted to Suffolk county, Massachusetts.

(8)   The defendant shall not possess any firearms, destructive devices or dangerous weapons while on release and there shall be no such firearms, destructive devices or dangerous weapons in the residence.

(9)   The defendant shall not use alcohol to excess and shall not use or possess any narcotic controlled substance except by prescription from a licensed medical practitioner.

(10)  The defendant shall submit to a drug test on the day of his release and at any time specified by Pretrial Services.

(11)  The defendant shall notify Pretrial Services within twenty-four (24) hours if he is arrested or has any contact with any law enforcement officials.

(12)  The defendant shall not violate any Federal, state or local law while on release, including the provisions of 18 U.S.C. §§ 1503, 1512 and 1513.

(13)  The defendant shall execute an unsecured bond in the amount of $25,00.00.
(14)  The defendant shall have no contact, either directly or indirectly, (except through his attorney) with any co-defendant or alleged gang members.

(15)    The defendant shall maintain employment while on release.

(16)    The defendant shall report to Pre-Trial Services whenever directed to do so.

## CONCLUSION

For all of the reasons set forth above, the defendant respectfully requests this Honorable Court to order the relief requested.

Respectfully submitted,

Memogne Lamothe
By His Attorney
*/s/ Carlos J. Dominguez*
Carlos J. Dominguez
239 Causeway Street
Suite G3
Boston, MA 02114
(617) 742-2824
BBO# 567005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served on all counsel of record on June 24, 2015 by complying with this court's directives on electronic filing.
*/s/ Carlos J. Dominguez*