UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Docket No. 1:15-cr-10147-MLW |
| DAVID COKE | |

## **DEFENDANT'S MOTION FOR RELEASE ON CONDITIONS**

The defendant, David Coke ("Coke"), by and through undersigned counsel, respectfully moves this Honorable Court to allow Coke's release pending adjudication of the criminal charges against him, pursuant to 18 U.S.C. § 3142(a)(2). As grounds therefor, Coke avers and states he is not a flight risk and there are conditions of release that will ensure the "the safety of any other person and the community," as required by 18 U.S.C. § 3142(f). Specifically, Coke suggests that imposition of the following specific conditions of release satisfy the bail statute:

1. he be subject to home incarceration, involving 24-hour-a-day lock-down, with permission to leave subject to prior notice to U.S. Probation and limited to medical necessities, attorney meetings, court appearances and/or any other activities specifically approved by this Court;

2. he be subject to GPS electronic monitoring;

3. he reside at 16 Stockton Street, Dorchester, MA 02124[1];

4. he be subject to the third-party surety of his girlfriend's mother, Audrey, with whom he shall reside at 16 Stockton Street, and who shall address his subsistence needs, accompany him to and from court appearances, any pre-approved lawyer and/or medical emergency visit(s), and immediately report to U.S. Probation any violation of his conditions;

---

[1] 16 Stockton Street is jointly owned by Emerson Springer ("Emerson") and Audrey Springer ("Audrey"). Emerson and Audrey are still married, but separated. Audrey currently resides at 16 Stockton Street with her daughter (and Coke's long-time girlfriend, and now fiancée) Shekeira Springer ("Shekeira").

5. he sign a secured appearance bond in the amount of $325,000, which shall be fully collateralized by the following two (2) properties[2]:
    a. 16 Stockton St., Dorchester, MA 02124[3]
    b. 72 Forest St., Roxbury, MA 02119[4]

6. he sign an unsecured appearance bond in the amount of $425,000.00[5];

7. he be subject to random urinalysis/drug screening by the U.S. Department of Probation to assure he is drug/opiate free;

8. his residence be subject to random, unannounced searches by U.S. Probation;

---

[2] Undersigned counsel is in possession of appraisals and mortgage statements for each property and will be furnished to this Honorable Court, U.S. Probation and the government upon direction by this Honorable Court should a bond issue.

[3] As noted, 16 Stockton Street is jointly owned by Emerson and Audrey. According to a recently performed appraisal, 16 Stockton Street has been valued at approximately $410,000. Additionally, the principal balance for Emerson and Audrey's mortgage on 16 Stockton Street amounts to $261,800. This leaves a **total amount of equity of $148,200**. Emerson and Audrey are prepared to execute any necessary documentation for purposes of collateralizing the $325,000 secured bond proposed herein, and will be present at the detention hearing to perform the same.

[4] 72 Forest Street is owned by Dion Martin ("Dion"), a close personal friend of Coke's, who is employed by Massachusetts Bay Transportation Authority's Maintenance Department. According to a recently performed appraisal, 72 Forest St. has been valued at approximately $410,000. Additionally, the principal balance for Dion's mortgage on 72 Forest Street amounts to $261,800. This leaves a **total amount of equity of $179,600**. Dion is prepared to execute any necessary documentation for purposes of collateralizing the $325,000 secured bond proposed herein, and will be present at the detention hearing to perform the same.

Undersigned counsel is aware of the fact that the property owners who are putting up their property on behalf of Coke are not related to him by blood. Accordingly, this Honorable Court may express concern that this may reduce the effectiveness of such secured bonds because a defendant might be more likely to leave unrelated persons "holding the bag" as opposed to direct family members. However, it is important to note two (2) things: (1) 18 U.S.C. § 3142(c)(1)(B)(xii) does not distinguish the type of relationship the defendant may have with the surety who is executing the bail bond; it simple states "solvent sureties" which suggests the surety can be anyone, even non-relatives. (2) That persons who are not related to Coke are willing to put up their *homes* strongly evidences the faith they have in his ability to comply with this Honorable Court's conditions of release, should they issue.

[5] The $325,000 appearance bond secured by 16 Stockton Street and 72 Forest Street, and the $425,000 unsecured appearance bond, amounts to a total of $750,000 in appearance bonds.

9. that all visitors to his 16 Stockton Street residence be pre-approved by U.S. Probation;

10. that he avoid all contact, directly or indirectly, with any person who is or may become a victim or potential witness in the instant prosecution, including but not limited to, all named co-defendants or any member of the so-called Columbia Point Dawgs (unless in the presence of undersigned counsel);

11. he surrender his U.S. passport to U.S. Probation if he has one, and he not apply for one if he does not have one;

12. that he abide by all statutory conditions of release as well as any other conditions set forth in 18 U.S.C. 3142(c)(1) which this Honorable Court deems necessary; and

13. that an arrest warrant be executed by this Honorable Court and held in abeyance unless or until any of the foregoing conditions has been violated.

## APPLICABLE LAW

Coke has been named in two (2) separate indictments: Docket Nos. 15-cr-10146-FDS (hereinafter "Case 1") & 15-cr-10147-MLW (hereinafter "Case 2"). Case 1 is a single-count indictment charging a conspiracy to distribute cocaine base, cocaine, heroin and Oxycodone in violation of 18 U.S.C. § 846[6]; Case 2 is also a single-count indictment charging a conspiracy to distribute cocaine base, cocaine, and heroin, in violation of 21 U.S.C. 846.[7] The government has cited the following grounds for detention: 18 U.S.C. § 3142(f)(1)(C) (the defendant has been charged with "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act"); and § 3142(e) (setting forth the rebuttable presumption of risk of flight and danger to the community).

---

[6] This indictment contains a specific allegation that approximately 1 kilogram of heroin is attributable to Coke, which triggers the ten (10) year mandatory minimum of 21 U.S.C. § 841(b)(1)(A)(i).

[7] This indictment contains a specific allegation that approximately 5 kilograms of cocaine and 28 grams of cocaine base are attributable to Coke, which triggers the ten (10) year mandatory minimum of 21 U.S.C. § 841(b)(1)(A)(ii) and the five (5) year mandatory minimum of 21 U.S.C. 841(b)(1)(B)(iii), respectively.

3

Due to the indictments in this case, 18 U.S.C. § 3142(e)(3)(A) creates a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." However, "the presumption serves to shift the burden of production and to require that the defendant introduce '*some* evidence' to the contrary." *United States v. O'Brien*, 895 F.2d 810, 815 (1st Cir. 1990) (emphasis added). While Coke's criminal record, the penalty he is facing, and the probable cause determination by the Grand Jury expressly implicates the presumption described above, it in no way alters the clear and convincing evidence standard by which the government must establish the defendant does, in fact, present a risk of danger to the community, regardless of the presumption. *See United States v. Patriarca*, 948 F.2d 789 (1st Cir. 1991). The statute is clear: "in determining whether there are conditions of release that will reasonably assure… the safety of any other person and the community," this Court "shall consider" the factors set forth in 18 U.S.C. § 3142(g)(1)-(4).

## ARGUMENT

### A. Safety of the Community

Here, Coke avers and states that the conditions of release enunciated above are more than sufficient to assure the defendant's appearance and "the safety of any other person and the community," and successfully rebuts the presumption of § 3142 described above. Perhaps most importantly, Coke will be subject to GPS monitoring and will be placed on 24-hour-a-day lock-down, every single day. As an additional safeguard, Coke will be in the custody of a third party surety (his girlfriend's mother), per the proposed conditions of release stated above, who will swear before this Honorable Court that she will immediately notify U.S. Probation of any deviation on his part from this Court's ordered conditions of release. This not only eliminates

any risk of purported danger to the community, but also helps ensure his appearance in court as required. Moreover, the third-party surety will have executed a bail bond which essentially will forfeit her home if she were to allow Coke to violate any of his conditions of release. Accordingly, she will have a *very* strong incentive to ensure he remains complaint and to do whatever can to notify necessary parties of any deviations.[8]

First Circuit precedent, namely *United States v. Patriarca*, 948 F.2d 789 (1st Cir. 1991) and *United States v. O'Brien*, 895 F.2d 810 (1st Cir. 1990), is very instructive for purposes of this Court's determination here. In *Patriarca*, despite the introduction of evidence supporting allegations that the defendant was the "Boss" and titular leader of a world-wide criminal organization engaged in acts of murder, extortion, drug-dealing and witness intimidation (as supported by tape recordings of pledges by mafia inductees to kill government informants and witnesses if ordered to do so) with myriad "Soldiers" and "Associates" at his beck and call, the First Circuit nonetheless upheld the District Court's conclusion that release on conditions, including home confinement, were adequate to reasonably assure the safety of any person and the community. Although Patriarca was not facing mandatory minimum prison sentence(s) as Coke is, Coke is not charged as the head of a violent criminal enterprise. By contrast, the defendant in *O'Brien* was facing a mandatory minimum prison sentence. Notwithstanding evidence in that case that the defendant was also a high-level DEA Agent with ties outside the continental United States who was charged with narcotics violations involving kilogram (cocaine) weight requiring imposition of a mandatory minimum prison sentence if convicted of

---

[8] It is also worth pointing out that the persons who will be executing a bail bond on behalf of Coke are not related to him, but are instead friends of his. They will have *even more* incentive than a blood relative, who may be willing to "let things slide." Accordingly, since the persons who will be charged with ensuring his compliance are not blood relatives, further minimizes any danger to the community which inheres in the types of charges at issue.

5

at least ten (10) years, the First Circuit upheld the District Court's conclusion that the posting of the defendant's Virginia home and electronic monitoring were sufficient to ensure his appearance as required. *O'Brien*, 895 F.2d at 811. To suggest that Coke, who is referenced a mere three (3) times in the detention affidavit by Matthew Knight,[9] should be treated *more harshly* by denying him release than both the one-time head of the New England Mafia in *Patriarca* and a government trained law enforcement official agent charged with drug crimes in *O'Brien* strains credulity.

Through this motion, Coke is proposing conditions arguably more stringent than those imposed in the above-referenced cases: not only GPS monitoring, but also 24-hour home confinement, third-party custodianship by his girlfriend's mother who will reside with him in her home and be there with him 24/7, plus random house searches and mandatory urinalysis and drug testing. While the charges in the instant case are equally serious, it cannot credibly be argued that Coke poses a greater threat to the safety of any person or the community than the proven leader of the New England Mafia and/or a high-profile DEA Agent accused of tarnishing his badge and betraying his office.

Based on the foregoing, Coke has now provided "some evidence" sufficient to rebut the presumption set forth in § 3142. Turning now to the evidence upon which the government has preliminarily relied upon, namely the *Affidavit of Special Agent Matthew C. Knight* (hereinafter "Knight Affidavit"), it is respectfully submitted the government's showing is exceedingly weak. The Knight Affidavit is a 27 page document which describes the history of the so-called Columbia Point Dawgs ("CPD") and a brief overview of the investigation which gave rise to the

---

[9] As will be discussed in greater detail below, Coke is mentioned only in paragraphs 23, 27 and 47. He is referred to as being seen driving nice cars, being the source of supply of co-defendant Willie Berry, and of speaking with an "unknown male" about a purported shooting with which he concededly had nothing to do and for which he has not been charged.

instant indictments. Coke is mentioned only in the following paragraphs: ¶ 23, ¶ 27, and ¶ 47 (in other words, a mere three (3) of the fifty (50) paragraph detention affidavit references Coke). Deconstructing these three (3) paragraphs in which Coke is mentioned is quite revealing with respect to the government's showing (or lack thereof) of danger.

Paragraph 23, for example, merely states that Coke, among others, "were all seen driving different Maseratis, as well as wearing expensive jewelry and designer clothing." How this statement establishes any competent proof he is a danger to the community is impossible to discern on any level of analysis. While paragraphs 27 and 47 at least provides *some* relevant information, they are still insufficient to meet the standards required by the statute. According to paragraph 27, Coke "ran a violent robbery and drug trafficking Crew operating out of [his] auto-body shop in Stoughton." Close examination reveals, however, that this is merely a restatement of the charges in the indictment. If that were sufficient, then *all* persons indicted for drug trafficking in federal court would, at all times, be ordered detained. As to the "violent robbery" allegation, it is merely a bald assertion with absolutely no specific information; the affiant simply does *nothing* to corroborate the statement or to provide additional information for purposes of this Court analysis. In short, that Coke has not been charged with robbery. That the affiant has provided no information about the allegation should cause this Court to view the allegation with a jaundiced eye. Finally, paragraph 47 provides almost no information relevant to the danger analysis. It simply states that a phone call was intercepted during which Coke could be heard "telling an unknown male the identity [of the shooter of a Greenwood Street gang member] and confirming that the CPD member was driving a Toyota Tundra that day." Coke has not been charged with this crime and his mere knowledge that it was committed (assuming such an allegation could ever hope to establish that) does nothing to establish *Coke's* dangerousness.

In sum, the government, to establish dangerousness, can merely rely upon the charges for which probable cause was found by a Grand Jury. This probable cause finding was sufficient to trigger the rebuttable presumption of dangerousness, but no more. That presumption has successfully been rebutted by the significant conditions Coke has proposed herein.

**B. Risk of Flight and Ties to the Community**

Coke's close ties to the local communicate militate against any claim he presents a risk of flight. Coke is a life-long Massachusetts resident who has not lived outside of the Greater Boston Area, or even beyond the South Shore. He was born in 1979 and grew up in the Four Corners area of Dorchester. He attended public school in the South Boston and Dorchester school systems and lived in the same house in Dorchester until he was 22 years old. Coke resided in Dorchester until the age of 30, when he moved to Norwood with his girlfriend, Virginia Barboza ("Ms. Barboza"); Ms. Barboza's sister, Sky Robinson, is a Boston Police Officer. Coke then moved to Quincy when he was approximately 36 years old and has resided there until his arrest in July.

Almost all of Coke's family resides in eastern Massachusetts. Coke's 17 year old son lives in Bridgewater with his mother, Nicole Elmore (with whom Coke lived in Dorchester from 1998-2005); and his 2 year old son lives with Ms. Barboza in Quincy at the residence Coke had been residing at before his arrest. Both of Coke's parents are still alive (his father, Stanley, is 73 and his mother, Sarah, is approximately 68). They both live in Roxbury and prior to his arrest, Coke had daily contact with them. Importantly, Coke reports his father has severe kidney problems and may require a transplant; Coke indicates he is a possible kidney donor for his father if the need arises. Coke's older brother, Desmond, also lives in Dorchester, is married and has 2 daughters. His twin brother, Daniel, likewise resides in Dorchester with his girlfriend and

children.  His sister, Krystal, lives in Dorchester, as well, with her 3 children.  Lastly, he has been in a relationship with his fiancée, for approximately 4.5 years.

Based on the foregoing, Coke's ties to the community are substantial and compellingly suggest his risk of flight to be extremely limited.  Between his 2 brothers and 1 sister, all of whom live in Dorchester, Coke is an uncle to over 5 children; he has parents living nearby who need his support, especially should his father requires a kidney transplant; and he has 2 sons living locally who depend upon him.  Moreover, Coke is a life-long auto mechanic and could likely find employment should this Honorable Court on its own intiative order employment as a condition of release as it has for many of his below-described co-defendants.  Simply put, Coke's entire world is been defined and cabined by the Commonwealth of Massachusetts; there is no risk of him fleeing the jurisdiction.[10]

### C.  Release of Coke's Co-Defendants

It is worth noting this Honorable Court has ordered the release of some of Coke's co-defendants (or other persons named in related indictments) despite the fact that those persons, too, have been subject to the same rebuttable presumption set forth in 18 U.S.C. § 3142(e)(3)(A). A comparison of these other defendants to Coke suggests that Coke's release is also appropriate, especially because he is seeking more stringent conditions of release than they have been made subject to:

- **Larry Bailey ("Bailey")** – This Honorable Court entered an order to release Bailey on conditions on September 23, 2015.  *See* Case No. 15-cr-10147, Dkt. # 76.  Coke is seeking to be released on almost identical conditions as Bailey, except that Coke's secured bail bond will be fully collateralized by property whose total equity amounts to over $325,000 *and* he will be also signing an unsecured bail bond in the amount of $425,000. According to the Knight Affidavit, not only did Bailey allegedly act as Coke's source of supply, he also "used his two Boston businesses... to sell cocaine and cocaine

---

[10] As this Honorable Court is most assuredly aware, this is not the first time he has faced mandatory minimum prison time on drug criminal charges.

- **Brandi Williams ("Williams")** – This Honorable Court entered an order to release Williams on conditions on July 1, 2015. *See* Case No. 15-cr-10145, Dkt. # 44. Williams executed a bail bond $525,000 less than what Coke is proposing he post herein. Importantly, Williams was ordered to find employment which suggests she will not be under the same 24-hour lock-down that Coke is proposing. According to ¶ 28 of the Knight Affidavit, Williams was responsible for "oversee[ing]" the three (3) stash houses in Boston allegedly operated by the so-called "Williams Crew." Although Williams' involvement is admittedly less than what has been alleged against Coke, this difference is sufficiently accounted for by the substantially more onerous conditions Coke is proposing.

- **Juan Lara ("Lara")** – An order releasing Lara on conditions was entered on July 16, 2015. *See* Case No. 15-cr-10146, Dkt. # 46. Although Lara was required to execute a bond for $250,000, it was only secured by $25,000 in property. *See id.* Like Williams, Lara is required to seek employment which suggests he, too, is not under the same 24-hour lock-down proposed herein. Paragraph 26 of the Knight Affidavit alleges that Lara, along with Coke, was one of three (3) suppliers of oxycodone and heroin to Willie Berry. Despite being on similar footing as Coke, Coke is seeking substantially more stringent conditions than those imposed upon Lara.

- **Dearron Cureton ("Cureton")** – An order releasing Cureton on conditions was entered on September 15, 2015. *See* Case No. 15-cr-10148, Dkt. # 68. Cureton was required to post a mere $20,000 *unsecured* appearance bond and it appears he will be allowed to leave his residence at certain times of the day. The Knight Affidavit, in paragraph 32, indicates that Cureton, who was an "older" CPD member, was a source of supply of "cocaine and crack for the JONES CREW when CPD leader DEMETRIUS WILLIAMS was unavailable." Again, any qualitative difference in the allegations against Coke in comparison to those against Cureton are easily resolved by the substantially more onerous conditions Coke has proposed herein.

- **James Hardy ("Hardy")** – Hardy was also released on a mere $20,000 unsecured appearance bond. *See* Case No. 15-cr-10149, Dkt. # 73. According to the Knight Affidavit, Ileana Valdez allegedly supplied Hardy (and other CPD members) "with *hundreds* of grams of heroin a week." Knight Aff. at ¶ 34 (emphasis added).

The defendant submits that an order pursuant to 18 U.S.C. § 3142(h) incorporating all of the above enumerated conditions is sufficient to satisfy the dictates of 18 U.S.C. § 3142(f), and he respectfully requests this Honorable Court issue an order permitting his release subject thereto.

WHEREFORE, the defendant respectfully requests his motion for release on conditions be granted.

Dated: November 9, 2015

Respectfully submitted,
DAVID COKE
By and through his attorney,

/s/ *R. Bradford Bailey*
R. Bradford Bailey, BBO#549749
Adamo Lanza, BBO#689190
BRAD BAILEY LAW, P.C.
10 Winthrop Square, 4th Floor
Boston, Massachusetts 02110
Tel. 857.991.1945
Fax. 857.265.3184
adamo@bradbaileylaw.com
brad@bradbaileylaw.com

Certificate Pursuant to L.R. 7.1

I, R. Bradford Bailey, hereby certify that on November 3, 2015, I communicated with counsel for the government, AUSA Emily Cummings, who advised me that the government will oppose the instant motion for the defendant's release on conditions.

/s/ *R. Bradford Bailey*
R. Bradford Bailey

Certificate of Service

I, R. Bradford Bailey, hereby certify that on this, the 9th day of November 2015, I caused a true copy of the foregoing *Defendant's Motion for Release on Conditions* to be served upon all necessary parties by virtue of electronically filing the same via the CM/ECF system.

/s/ *R. Bradford Bailey*
R. Bradford Bailey